FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 1 3 2026

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT

Eastern District of Washington

Spokane Division

| | |
|---|---|
| DAVID LANFOR <br><br> Plaintiff, <br><br> v. <br><br> WENATCHEE VALLEY COLLEGE; FAIMOUS HARRISON, Ph.D., individually and in his official capacity; DIANA GARZA, Ph.D., individually and in her official capacity; DOES 1–5, <br><br> Defendants. | Case No. 2:26-cv-00013-TOR <br><br> COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND JURY TRIAL <br><br> (Civil Rights Action Under 42 U.S.C. § 1983 and Supplemental State-Law Claims) |

## I. INTRODUCTION

1. This action arises from Defendants' retaliation against Plaintiff for protected academic and accreditation complaints, their denial of constitutionally required due process, and their breach of contractual obligations to provide meaningful instruction.

2. After Plaintiff followed the grievance process required by the Northwest Commission on Colleges and Universities ("NWCCU") and expressly directed by Wenatchee Valley College ("WVC") administrators, Defendants declined to adjudicate Plaintiff's complaints and instead imposed and maintained a registration block without notice, charges, hearing, or appeal.

3. Defendants further accepted federal and state grant funds for courses in which they failed to deliver the educational services promised, resulting in breach of contract, failure of consideration, and unjust enrichment.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to **28 U.S.C. §§ 1331 and 1343(a)(3)** because this action arises under the Constitution and laws of the United States, including **42 U.S.C. § 1983**, and seeks redress for the deprivation, under color of state law, of rights secured by the Constitution.

5. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to **28 U.S.C. § 1367**, as those claims form part of the same case or controversy as the federal claims alleged herein.

6. Venue is proper in this District pursuant to **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Washington, and Defendants reside in and conduct official business within this District.

7. This Court also has jurisdiction pursuant to **28 U.S.C. § 2201** for declaratory relief.

8. Compliance with State Tort Claim Requirements. Plaintiff has complied with all applicable notice and presentment requirements under Washington law, including the filing of a tort claim with the appropriate state agency, and more than sixty (60) days have elapsed since such filing.

## III. PARTIES

9. **Plaintiff David Lanfor** is a resident of Washington State and was an enrolled student at WVC at all times relevant.

10. **Defendant Wenatchee Valley College** is a public community college and state actor.

11. **Defendant Faimous Harrison, Ph.D.** was President of WVC and exercised final supervisory authority over student services, grievance processes, and enrollment status.

12. **Defendant Diana Garza, Ph.D.** was Vice President of Student Affairs and Enrollment Management and exercised authority over registration holds, CARE referrals, and student enrollment access.

13. **DOES 1–5** are WVC employees whose identities are presently unknown and who participated in or ratified the challenged conduct.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Enrollment, Academic Standing, and Financial Aid

14. Plaintiff began attending Wenatchee Valley College ("WVC") in the Fall Quarter of 2021 as a full-time student.

15. Plaintiff's tuition and fees throughout his enrollment were paid through a combination of **federal Pell Grants and Washington State need-based grants**, which also provided living-expense disbursements for books and basic support while attending school.

16. Plaintiff attended WVC continuously across multiple academic terms, including **Winter 2022, Spring 2022, Fall 2022, Winter 2023, Spring 2023, Spring 2024, and Winter 2025,** and remains classified as a student subject to an enrollment hold.

17. During his enrollment, Plaintiff maintained strong academic performance, earning placement on the **Dean's List and President's List,** and was inducted into **Phi Theta Kappa,** an academic honor society recognizing scholastic achievement.

18. Plaintiff reasonably relied on WVC's published catalogs, course descriptions, and academic policies in pursuing his course of study, including a **Bachelor of Science pathway in Electrical Engineering** offered through the community college system at the time of his enrollment.

### B. Plaintiff's Student Leadership and Protected Advocacy

19. Plaintiff served as a leader in the **Mechatronics Club,** where he advocated for appropriate funding, resources, and academic opportunities for students.

20. Plaintiff also raised concerns regarding the **selection and governance of the Student Senate**, objecting to the practice of administrative hand-selection of representatives rather than student elections, which Plaintiff believed undermined student representation.

21. Plaintiff's advocacy involved communications with faculty and administrators regarding student governance, academic integrity, and institutional practices, and constituted **protected speech on matters of public concern**.

### C. ENGR 329: Failure of Instruction and Institutional Inaction

22. In Fall 2022, Plaintiff enrolled in **ENGR 329**, a core course within his engineering pathway.

- 3 -
COMPLAINT

23. Shortly before the term began, students were notified that the assigned instructor, **Dr. Sai Ramaswamy**, would be delayed due to visa issues preventing his return to the United States.

24. Despite knowing the instructor would be absent for most of the quarter, WVC elected to proceed with the course without a substitute instructor or meaningful contingency plan.

25. Plaintiff suggested and assisted with attempts to conduct the course remotely via video conferencing, but these efforts failed due to time-zone barriers, lack of instructional materials, and logistical deficiencies.

26. As a result, **ENGR 329 proceeded with little to no instruction, no meaningful assessments, and no quizzes or examinations**.

27. Near the end of the quarter, students raised concerns regarding how they would be graded given the absence of instruction. Ultimately, the instructor awarded all students an "A," acknowledging that the course requirements had not been met.

28. The instructor offered informal remediation after the quarter, but this promise was not fulfilled, and Plaintiff did not receive the instruction for which he had enrolled and paid.

29. These failures were acknowledged by WVC faculty and documented in internal investigative records produced through Plaintiff's Public Records Act requests.

30. Shortly before the quarter concluded, WVC notified students that they had been **undercharged approximately $800** for the course and demanded additional payment. Following Plaintiff's objections, WVC used **foundation grant funds** to erase the charge rather than acknowledge instructional failure.

31. Plaintiff met with senior administrators, including then-Vice President **Chio Flores**, to raise concerns about ENGR 329's failure. No corrective action was taken, and the matter was effectively closed without remedy.

## D. Subsequent Academic Harm: PHYS 114 and MATH 141

32. Following the ENGR 329 experience, Plaintiff's academic confidence and momentum were significantly impacted.

33. In Spring 2024, Plaintiff enrolled in **PHYS 114**. The assigned instructor, though credentialed, had severe English-language communication deficiencies that rendered lectures largely incomprehensible.

34. Plaintiff raised concerns directly with the instructor regarding his inability to understand lectures. Despite these efforts, instructional barriers persisted, and Plaintiff ultimately withdrew from the course.

35. The withdrawal resulted in a **Satisfactory Academic Progress (SAP)** issue. Plaintiff successfully appealed and was permitted to continue enrollment.

36. In Winter 2025, Plaintiff enrolled in **MATH 141 (Pre-Calculus)**, expecting formal instruction consistent with WVC's curriculum.

37. The course primarily consisted of problem-solving demonstrations without foundational teaching. The instructor repeatedly stated that students "should have learned" much of the material previously.

38. Despite having completed all prerequisite 90-level mathematics courses at WVC, Plaintiff encountered substantial material that had never been taught to him.

39. During the term, the instructor acknowledged that many students were unprepared, and WVC subsequently created a **new preparatory course** to address these deficiencies—an option not available to Plaintiff at the time.

40. Plaintiff received a failing grade in MATH 141, further impacting his academic standing and financial aid eligibility.

## E. Plaintiff's Grievances and Escalation Through Formal Channels

41. Plaintiff pursued remedies through internal and external channels, including complaints to **state oversight bodies** and the **Northwest Commission on Colleges and Universities (NWCCU)**.

42. NWCCU responded that Plaintiff was required to exhaust WVC's internal grievance process before external action could proceed.

43. Plaintiff then submitted a **formal grievance to Vice President Diana Garza**, detailing instructional failures and requesting academic relief, including grade removal and tuition credit.

44. Rather than adjudicating the grievance, WVC routed Plaintiff's concerns away from academic or conduct processes.

## F. CARE Referral and Registration Block

45. On or about **May 8, 2025**, Vice President Garza directed her executive assistant to instruct the Registrar to **place a "VP Hold" on Plaintiff's student account to prevent registration.**

46. On the same date, Plaintiff received a letter from the **WVC CARE Team**, stating that an enrollment hold had been placed and conditioning removal of the hold on Plaintiff's agreement to meet with CARE administrators.

47. The CARE letter cited generalized concerns about Plaintiff's "tone" and "interactions" but **did not identify specific misconduct, policy violations, or incidents.**

48. Plaintiff was **not provided written charges, notice of alleged violations, a hearing, or an opportunity to contest the hold through formal disciplinary procedures.**

49. Plaintiff responded in writing, requesting that his academic grievances be addressed on their merits and objecting to the mischaracterization of his advocacy as emotional or behavioral instability.

50. Prior to the imposition of the enrollment hold, and before Defendant Garza was hired by WVC, Plaintiff met personally with Defendant Harrison at Harrison's request to discuss Plaintiff's academic complaints and concerns regarding instructional quality and administrative practices, including deficiencies in ENGR 329. During that meeting, Harrison stated that he was evaluating how members of his senior cabinet handled such issues and indicated that he exercised discretion in determining which administrators he would retain. Harrison directed Plaintiff to schedule a follow-up meeting with then-Vice President Flores to address the unresolved academic issues, explaining that the purpose of the meeting was for Harrison to assess Flores's handling of the matter, characterizing the process as analogous to a "**secret shopper**" evaluation of administrative response. Plaintiff understood the meeting to be an academic discussion initiated at Harrison's request for evaluative purposes, and was not informed that the meeting would ultimately be reframed as a disciplinary encounter or used to create adverse records regarding Plaintiff's conduct. The subsequent meeting, attended by additional senior administrators and conducted with security present, shifted away from adjudication of the academic complaints and instead generated adverse characterizations of Plaintiff. Although Harrison later acknowledged to senior administrators that he had directed Plaintiff to schedule the meeting for evaluative purposes, he failed to intervene, correct the mischaracterization of Plaintiff, or implement

procedural safeguards as the matter escalated and ultimately culminated in the CARE referral and enrollment hold.

## G. Concealed Allegations and Discovery Through Public Records Requests

51. Plaintiff later learned through **Public Records Act (PRA) requests** that WVC had generated internal memoranda and reports containing negative character allegations about him.

52. Plaintiff was **never notified of these reports at the time they were created**, nor given an opportunity to review or respond to them before adverse action was taken.

## H. Ongoing Harm and Damages

53. As a result of Defendants' actions, Plaintiff remains unable to register for courses.

54. During the period of Plaintiff's exclusion, WVC eliminated the **Bachelor of Science pathway in Electrical Engineering**, allowing only a limited number of remaining students to complete it.

55. Even if the registration hold were lifted, Plaintiff's original degree pathway is no longer available.

56. Plaintiff has suffered loss of educational opportunity, delay of career advancement, loss of academic honors standing, emotional distress, and the effective deprivation of the education for which public funds were awarded on his behalf.

## V. CLAIMS FOR RELIEF

## COUNT I

## Retaliation for Protected Speech and Petitioning
(42 U.S.C. § 1983)

57. Plaintiff engaged in protected activity by filing academic and accreditation complaints.

58. Defendants Garza and Harrison took adverse action by imposing and maintaining a registration block.

59. The imposition and maintenance of a registration block would chill a person of ordinary firmness from continuing to engage in protected speech and petitioning activity, including raising academic, accreditation, or institutional complaints.

60. Temporal proximity, knowledge, and lack of legitimate process support an inference of retaliatory motive.

## COUNT II

**Denial of Procedural Due Process**

(42 U.S.C. § 1983)

61. Plaintiff possessed a protected property interest in continued enrollment.

62. Defendants deprived Plaintiff of that interest without notice, hearing, or appeal.

63. CARE outreach did not substitute for constitutionally required process.

## COUNT III

**Breach of Contract / Failure of Consideration**

(Washington State Law)

64. WVC's catalog, student handbook, and course descriptions form a binding contract between Plaintiff and Defendant Wenatchee Valley College.

65. Plaintiff fulfilled his obligations under the contract by enrolling in the courses at issue and complying with applicable academic requirements.

66. Defendants breached the contract by failing to provide meaningful instruction and assessment in **ENGR 329**, **Physics 114**, and **MATH 141**, as promised in institutional materials and course descriptions.

67. Plaintiff's tuition for the courses at issue was paid to Defendant Wenatchee Valley College through **federal Pell Grant funds and Washington State grant programs**, which Defendant accepted in exchange for providing the educational instruction and services.

68. Defendants accepted and retained those tuition funds despite failing to deliver the contracted educational services, resulting in **failure of consideration and unjust enrichment**.

69. Plaintiff does not seek personal disbursement of grant funds, but rather **equitable rescission of the educational contract** and **institutional restitution**, including tuition reversal, credit, or return of funds to the appropriate federal and state grant programs, as required by law.

70. Plaintiff pursued his coursework and degree in reasonable reliance on WVC's representations that successful completion would prepare him for professional and entrepreneurial opportunities requiring the promised education and credentials.

**COUNT IV**

**Municipal Liability (Monell)**

(42 U.S.C. § 1983 – Against WVC)

71. Plaintiff's constitutional injuries were caused by decisions of officials with final policymaking authority and by institutional practices substituting non-adjudicatory interventions for required process.

72. Defendant Garza possessed final authority over enrollment holds; her actions constituted official policy.

73. WVC acted with deliberate indifference by failing to ensure due-process compliance before imposing enrollment-blocking sanctions.

**VI. QUALIFIED IMMUNITY DOES NOT SHIELD INDIVIDUAL DEFENDANTS**

74. Harrison and Garza acted under color of state law.

75. It was clearly established that public college students are entitled to notice and an opportunity to be heard before enrollment-blocking sanctions.

76. Garza personally ordered or authorized the registration block with knowledge of Plaintiff's protected activity and without due process.

77. Harrison knew, including through direct written notice from Plaintiff and prior in-person meetings, and failed to take corrective action.

78. The unlawfulness of Defendants' conduct was obvious.

79. Defendant Harrison is not entitled to qualified immunity because he personally participated in and supervised the administrative process that led to the challenged actions. Harrison affirmatively requested that Plaintiff raise his academic concerns through meetings with senior administrators, was aware that those meetings resulted in adverse characterizations of

COMPLAINT

Plaintiff rather than resolution of the underlying issues, and possessed authority to intervene or correct the process. Despite such knowledge and authority, Harrison failed to take corrective action as the matter progressed and ultimately culminated in the CARE referral and enrollment hold. Under clearly established law, a supervisory official who knowingly sets in motion, authorizes, or fails to halt a course of conduct that results in a constitutional deprivation is not shielded by qualified immunity.

## VII. DAMAGES

80. Plaintiff has suffered loss of educational opportunity, loss of financial aid, delay in degree completion, lost employment opportunities, and emotional distress.

81. Plaintiff also incurred consequential out-of-pocket expenses, including books, instructional materials, and basic living costs incurred in reliance on enrollment in courses that were not meaningfully delivered, and will be required to incur such expenses again in order to repeat the coursework.

82. Defendants Garza and Harrison acted with reckless disregard for Plaintiff's rights.

83. As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, including anxiety, humiliation, loss of sleep, and emotional anguish stemming from the sudden imposition of a registration block, the stigmatizing CARE referral, the uncertainty surrounding his academic future, and the deprivation of fair process. These harms were foreseeable consequences of Defendants' conduct and occurred independent of any physical injury.

84. As a further consequence of Defendants' actions, Plaintiff suffered loss of academic standing and honors, including impairment or loss of continued eligibility for membership in Phi Theta Kappa, an international academic honor society for which Plaintiff had previously qualified based on academic excellence. This loss diminished Plaintiff's academic record, professional opportunities, and eligibility for scholarships and transfers, constituting compensable reputational and economic harm.

85. As a further consequence of Defendants' actions, Plaintiff suffered loss of educational opportunity and expectancy. Plaintiff enrolled at Wenatchee Valley College for the purpose of completing a Bachelor of Science degree in Electrical Engineering, completed required coursework toward that program, and relied on its continued availability. Defendants' imposition of a registration block without due process prevented Plaintiff from continuing

COMPLAINT

enrollment, after which the program was discontinued. Plaintiff thereby lost the opportunity to complete the degree pathway for which he enrolled, invested time and resources, and maintained academic standing.

## VIII. PRAYER FOR RELIEF

Plaintiff respectfully requests:

A. Compensatory damages including but not limited to damages for emotional distress, mental anguish, humiliation, loss of educational opportunity, and reputational harm, in an amount to be determined at trial;

B. Punitive damages against Garza and Harrison individually;

C. Declaratory relief;

D. Rescission of tuition for ENGR 329, Physics 114, and MATH 141, with funds returned to appropriate grant programs or credited as required by law;

E. Deletion, neutralization, or expungement of ENGR 329, Physics 114, and MATH 141 from Plaintiff's academic transcript;

F. An award of reasonable attorneys' fees and costs pursuant to **42 U.S.C. § 1988, applicable Washington law**, and any other authority the Court deems just and proper;

G. Such other relief as the Court deems just.

## IX. JURY DEMAND

**Plaintiff demands trial by jury on all issues so triable.**

**DATED this __09th__ day of January, 2026.**

Respectfully submitted,

DAVID LANFOR
PO Box 4784
Wenatchee, WA 98807
Phone: 619-997-8681
Email: DavidLanfor@gmail.com

Plaintiff, Pro Se

- 11 -
COMPLAINT